UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 2:18-CR-80 JD |
| LATONYA FOXX | |

## OPINION AND ORDER

Defendant LaTonya Foxx admitted to preparing multiple false tax returns and pleaded guilty to Wire Fraud in violation of 18 U.S.C. § 1343. The Court sentenced her on February 23, 2022. At the sentencing hearing, Ms. Foxx objected to the amount of restitution sought by the Government, claiming that some of the taxpayers for whom she prepared and filed the false returns repaid the IRS their illegal gains. As a result of this objection, pursuant to 18 U.S.C. § 3664(d)(5),[1] the Court allowed the parties to submit additional briefs regarding the amount of restitution Ms. Foxx owed.

In her brief, Ms. Foxx argues that the Government's loss calculation of $1,261,903 is wrong and that the actual loss amount, "as she has determined," is $653,189. (DE 218 at 3.) In fact, according to Ms. Foxx, that amount "could possibly be" even lower "because of possible audit payment credits the IRS likely received from individual filers" after the fraudulent filings were identified. (DE 218 at 1.) She claims several of her former clients told her that they were audited after her fraud unraveled. In addition, Ms. Foxx insists that the loss resulting from her

---

[1] Section 3664(d)(5) allows up to 90 days after sentencing to determine the losses where such losses aren't ascertainable by the time of sentencing: "If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing."

codefendant Tanisha Bledsoe's fraudulent filings should not be attributed to her. With her brief, Ms. Foxx submitted "a detailed spreadsheet" that she claims proves her position. (DE 218-1.)

In its response, the Government explains the methodology that the IRS employed in ascertaining the loss Ms. Foxx caused and emphasizes that it counted the returns Ms. Foxx filed herself and not the returns Ms. Bledsoe filed.

"Federal courts enjoy no inherent power to order restitution—they may only do so where authorized by statute." *United States v. Berkowitz*, 732 F.3d 850, 853 (7th Cir. 2013). Here, such statute is the Mandatory Victims Restitution Act of 1996 ("MVRA"). 18 U.S.C. § 3663A. Commonly, the restitution amount will equal the actual loss amount. *Berkowitz*, 732 F.3d at 854 ("Nor is it uncommon for the amount of the restitution award to mirror actual loss."). However, the amount of restitution cannot always be calculated with precision or mathematical certainty:

> There remains the question of how district courts should go about determining the proper amount of restitution. At a general level of abstraction, a court must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses. This cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment. But that is neither unusual nor novel, either in the wider context of criminal sentencing or in the more specific domain of restitution. It is well recognized that district courts by necessity "exercise ... discretion in fashioning a restitution order." § 3664(a).

*Paroline v. United States*, 572 U.S. 434, 459 (2014) (discussing general principals of restitution before applying them to a child pornography case).

Having reviewed the presentence report, the supporting materials, and the parties' briefs, the Court finds that Ms. Foxx must repay restitution to the IRS in the amount of $1,261,903. Ms. Foxx's arguments to the contrary are unconvincing and speculative. Although she claims that the actual loss is $653,189, which is based upon her "spreadsheet," she provides no information to explain the basis for this amount. She does not explain when she prepared her spreadsheet, what

methodology she used, or why her calculations are more accurate than the Government's. Equally speculative is her claim that the IRS has likely been repaid by some of the taxpayers. At the sentencing hearing, the Government's counsel stated that she was not aware of the IRS being repaid by anyone, but she assured the Court that the IRS would review any possible repayments if Ms. Foxx's counsel would provide the names of persons who may have repaid any fraudulently obtained refunds. Yet, it does not appear that Ms. Foxx's counsel has provided the Government with names of any such persons, and Ms. Foxx's brief doesn't identify anyone who purportedly repaid the ill-gotten gains. Therefore, there's no concern here with double recovery by the IRS, and any possibility of collecting back taxes does not impact the calculation of "full restitution." *United States v. Johnson*, 911 F.3d 849, 852 (7th Cir. 2018).

In addition, Ms. Foxx has not provided a valid reason for excluding any of the false returns from being counted toward the restitution amount. Ms. Foxx suggests that she "did not intend to commit tax fraud when she first began to file fraudulent returns in 2014, for tax year 2013, because she . . . did not truly know nor understand what she was doing constituted tax fraud and serious criminal conduct." (DE 218 at 2.) This way she seeks to exclude "approximately 29 fraudulent returns in 2013 for tax year 2012 and 86 fraudulent returns in 2014 for tax year 2013." (*Id*.) Yet, the Court is not persuaded that Ms. Foxx was unaware through the first 105 returns that her conduct was criminal and thus had no intent to defraud the IRS. To the contrary, as the Presentence Report explains, Ms. Foxx was submitting tax returns on behalf of others, representing to the IRS that they were entitled to education spending credits, even though they had no such expenditures. Moreover, Ms. Foxx was filing such false tax returns without revealing to the IRS that she was the actual preparer of the tax returns. Such deceitfulness and an

3

attempt to hide her identity contradict Ms. Foxx's assertion that she had no intent to defraud the IRS.

Finally, Ms. Foxx argues that she had no knowledge of Ms. Bledsoe and Ms. Lee's tax scheme. But this argument is of no consequence since the Government's loss amount is based upon the returns Ms. Foxx herself prepared and filed. Ms. Fox is jointly and severally liable with Ms. Yvonna Lee in the amount of $53,029 as this amount can be traced to their scheming together. She is not held accountable for any other fraudulently obtained money through the involvement of either Ms. Lee or Ms. Bledsoe.

On the other hand, the Court finds compelling the Government's explanation of how it ascertained the loss amount. At first, the IRS identified Ms. Foxx's returns for tax years 2013 through 2015. It then determined whether any of the identified returns falsely claimed education credits by comparing IRS Forms 8863 attached to tax returns with Forms 1098-T that are used by institutions of higher learning. During this process, the IRS identified three IP addresses which Ms. Foxx used to file the tax returns. Ms. Foxx controlled each of those IP addresses, and almost all of her filings matched the clients listed in her handwritten notes found during the search of her home. In addition, the taxpayers, whose returns were filed from Ms. Foxx's IP addresses and whom the IRS interviewed, identified Ms. Foxx as the preparer of their returns. Therefore, the Government's loss amount is based on the actual fraudulent returns submitted by Ms. Foxx and paid out by the IRS. Ms. Fox has submitted nothing to undermine the Government's methodology.

Accordingly, the Court FINDS that Ms. Foxx owes restitution to the IRS in the total amount of $1,261,903, with $53,029 of that amount being in joint and several liability with her codefendant Yvonna Lee. Ms. Fox is ORDERED to make restitution payments to the United

States District Court Clerk, 5400 Federal Plaza, Hammond, Indiana, 46320, for disbursement to the IRS. Because it appears that Ms. Foxx does not have the economic resources to pay the restitution in a lump sum payment, the Court finds that in the interest of justice it is necessary to order that, if she is unable to make a lump sum payment, then pursuant to 18 U.S.C. §§ 3572 and 3664(f)(3)(B), nominal payments of not less than $100 a month shall begin 60 days after her placement on supervision.

      SO ORDERED.

      ENTERED: April 26, 2022

                                    /s/ JON E. DEGUILIO
                                    Chief Judge
                                    United States District Court